UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────────────

REBECCA SMALLS,

                Plaintiff,

v.                                                        CASE # 18-cv-00656

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
───────────────────────────────────────────────

APPEARANCES:                                       OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC     KENNETH R. HILLER, ESQ.
 Counsel for Plaintiff                         BRANDI CHRISTINE SMITH, ESQ.
600 North Bailey Ave
Suite 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.               BLAKELY PRYOR, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II   FRANCIS D. TANKARD, ESQ.
 Counsel for Defendant                     OONA MARIE PETERSON, ESQ.
26 Federal Plaza – Room 3904
New York, NY 10278

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the Plaintiff's motion for judgment on the administrative record is **DENIED**, the Defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I.   RELEVANT BACKGROUND

### A.   Factual Background

Plaintiff was born on December 18, 1953, and graduated high school. (Tr. 15, 23, 38). Generally, Plaintiff's alleged disability consists of vision impairment, diabetes, hypertension, and high cholesterol. (Tr. 18, 168, 194). Her alleged disability onset date is September 11, 2010. (Tr. 190). Her date last insured was December 31, 2016. (Tr. 190). She previously worked as an image researcher. (Tr. 39, 53, 60-64).

### B.   Procedural History

On March 18, 2015, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (Tr. 168-173). Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On May 22, 2017, Plaintiff appeared before the ALJ, Stephen Cordovani. (Tr. 155). On July 3, 2017, ALJ Cordovani issued a written decision finding Plaintiff not disabled under the Social Security Act. (Tr. 15-24). On April 6, 2018, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Thereafter, Plaintiff timely sought judicial review in this Court.

### C.   The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since September 11, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: left eye blindness (20 CF'R 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CF'R Part 404, Subpart P, Appendix 1 (20 CF'R 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant cannot work around unprotected heights, or dangerous moving mechanical parts or machinery, cannot perform work requiring depth perception or left field of vision, no work in low light conditions, no visual accommodation and occasional near acuity.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on December 18, 1953 and was 56 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CPR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CPR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CPR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CPR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 11, 2010, through the date of the decision (20 CFR 404.1520(g)).

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes essentially one argument in support of her motion for judgment on the pleadings. Plaintiff argues the ALJ's RFC determination was not based on substantial evidence but rather was based solely on his lay interpretation of the bare medical findings of record. (Dkt. No. 10 at 8 [Pl.'s Mem. of Law]).

### B. Defendant's Arguments

In response, Defendant argues the ALJ properly assessed an RFC for a limited range of work based on substantial evidence of record. (Dkt. No. 13 [Def.'s Mem. of Law]).

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.   Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

### A.  The RFC Was Supported By Substantial Evidence

Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence. "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). Plaintiff also argues that the record was insufficient for the ALJ to assess Plaintiff's RFC, however, it is was her burden to produce evidence and prove both her RFC and her disability. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (claimant is "responsible for providing the evidence [the ALJ] will use to make a finding about [her] residual functional capacity"); *Poupore v. Astrue*, 566 F.3d 305-306 (2d Cir. 2009); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008); *see also Smith v. Berryhill*, 740 F. App'x 721 (2d Cir. 2018). "It is not unreasonable to require the claimant, who is in a better position to provide information about h[er] own medical condition, to do so." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the hearing, Plaintiff did not identify any evidence that was missing or request assistance in obtaining any records. *See* 20 C.F.R. §§ 404.935, 416.1435; *see also* SSR 17-4p (which became effective October 2017, but summarizes the claimant's duty to submit evidence).

The ALJ found Plaintiff could perform a full range of work at all exertional levels but could not work around unprotected heights, or dangerous moving mechanical parts or machinery; could not perform work requiring depth perception or left field of vision; could not work in low light conditions; and could not do visual accommodation; and could occasionally perform work that required near acuity. (Tr. 21). Part of Plaintiff's argument is that the ALJ failed to address Plaintiff's worsening right eye vision and erred by stating she has had "functional vision in the right eye." (Tr. 22; Dkt. No. 10 at 9). However, at step two of the sequential evaluation, the ALJ only found left eye blindness to be a severe impairment. (Tr. 21). There was no severe, or not severe impairment, found that related to Plaintiff's right eye. (Tr. 21-22). Therefore, it was not an error for the ALJ to not find any limitations related to the right eye based on the sequential evaluation. Issues that are not sufficiently argued in a plaintiff's briefs are considered waived. *See*

*Poupore*, 566 F.3d 303, 306 (2d Cir. 2009) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.") (internal citation omitted). Here, Plaintiff has failed to assert any specific error the ALJ made in his evaluation of the severe impairments and therefore waived any such argument.

Indeed, in this case, even if Plaintiff had argued the ALJ erred in not finding a severe right eye impairment, it would be harmless. First, a finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel,* No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19, 1999) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)). Here, the treating medical providers routinely observed throughout the relevant period that Plaintiff had no blurry vision or significantly decreased visual acuity in her right eye, and her pupils were reactive to light and accommodation. (Tr. 283-84, 286-87, 294-95, 297, 300, 305, 308, 316-17, 405, 408-09, 454, 456, 459, 461-62, 464, 466-47, 469). Dr. Bench and Dr. Yoganathan opined that Plaintiff had full visual field in her right eye. (Tr. 274, 277, 393, 395, 397). While Plaintiff had "trace" cataracts in her right eye, Dr. Yoganathan opined on two occasions that the cataracts were "not visually significant." (Tr. 275, 278). In March and April 2015, Dr. Bench and Dr. Albanese observed that Plaintiff had decreased visual acuity, but Dr. Albanese noted that Plaintiff was "not bothered by her vision". (Tr. 398, 429). Plaintiff testified she retired from her job because it was "too much" on her right eye and she was making mistakes at work. (Tr. 39-41). However, she also testified she had actually retired when she became pension-eligible and claimed no disability at the time. (Tr. 39-40, 51-52). She also clarified during the hearing that before she retired, her eye condition only caused her to make one mistake and occasionally need one 15-minute break "a few times a week" (Tr. 43-47). Plaintiff only cites the diagnoses of the right eye,

including nuclear sclerosis, trace posterior subcapsular cataracts, tilted nerve with peripapillary atrophy, loss of normal shape with pallor, vitreous condensation, mild attenuation, and pigmented scattered lattice, to support her argument but ignores the actual findings that were not complex because there was none, or they were not significant. (Tr. 274, 277, 428). The "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, itself, sufficient to deem a condition severe. *McConnell v. Astrue,* 2008 WL 833968, at *2 (N.D.N.Y.2008) (citing *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y.1995)).

In addition, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v. Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. § 404.1523, 416.923 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity"). It has been well established that "[b]ecause step two merely serves as a filter to screen out *de minimis* disability claims, a finding of any severe impairment, whether attributable to a single condition or a combination of conditions, is enough to satisfy its requirements." *Kessler v. Colvin*, 48 F. Supp. 3d 578, 593 (S.D.N.Y. 2014) (citing *Fortier v. Astrue*, No. 10-CV-01688, 2012 WL 3727178, at *9 (D. Conn. May 11, 2012)). The visual limitations in the RFC were not specific to the vision in one eye. As it pertains to the left eye, the ALJ found that Plaintiff had no visual abilities in almost every category, including no depth perception, no left field of vision, and no visual

accommodation. (Tr. 21). Plaintiff has not argued any evidence that would have led to greater limitations had vision been limited in the right eye.

Plaintiff's second part of her argument is that the ALJ based the RFC on bare medical findings and lay interpretation of those findings. (Dkt. No. 10 at 9). The RFC is an assessment of "the most [Plaintiff] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources. *Id*. §§ 404.1527(d), 404.1545(a)(3), 404.1546(c).

It is within an ALJ's discretion to compare and contrast the various medical opinions, along with all other relevant evidence, to resolve the conflicts in the evidence and determine Plaintiff's RFC (Tr. 21-22). *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *Schaal*, 134 F.3d at 504. Plaintiff is correct that there is no medical opinion in the file, however, the Second Circuit has held that where, "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity," *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x. 29, 34 (2d Cir. 2013), a medical source statement or formal medical opinion is not necessarily required, *see id.*; *cf Pellam v. Astrue*, 508 F. App'x. 87, 90 (2d Cir. 2013) (upholding ALJ's RFC determination where he "rejected" physician's opinion but relied on physician's findings and treatment notes). *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017). In the instant case, substantial evidence of record supports the ALJ's RFC.

The ALJ did not "translate" Plaintiff's eye examination findings, but rather took the evidence as a whole. Contrary to Plaintiff's argument, an ALJ is not required to "state on the record every reason justifying a decision." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations and citation omitted); see *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d

Cir. 2004). The ALJ was not required to "discuss every piece of evidence submitted*,*" *Bonet ex rel. T.B*., 523 F.App'x at 59, nor was he required to "explicitly…reconcile every conflicting shred of medical testimony…. It [wa]s sufficient that the ALJ noted that he carefully considered the exhibits presented in evidence in reaching his decision." *Stevenson v. Berryhill*, 1:16-CV-00379 (MAT), 2017 WL 2349733, at \*3 (W.D.N.Y. May 31, 2017) (unpublished). In this case, the ALJ's decision states that he "careful[ly] consider[ed]…the entire record." (Tr. 19, 21-22).

Plaintiff argues the ALJ's RFC had functional areas that he created from his own lay interpretation. However, the ALJ properly relied on the Dictionary of Occupational Titles ("DOT") and related publications when addressing the categories of visual abilities. *See*, *e.g.*, *DOT* #323.687-010, 1991 WL 672782 (including characteristics of "Near Acuity," "Depth Perception," "Accommodation," and "Field of Vision" for occupations), *DOT* 920.587-018, 1991 WL 687916 (same). By using terms that were from the DOT, to define Plaintiff's RFC, the ALJ gave information to the vocational expert in a manner that could be understood by the expert. (Tr. 21-22). Further, the ALJ determined the claimant had no visual abilities in nearly every category, which does not require any interpretation of severity. The ALJ found that Plaintiff had *no* visual abilities in almost every category, including no depth perception, no left field of vision, and no visual accommodation. (Tr. 21). Based on Plaintiff's testimony that she had difficulty seeing in low light, the ALJ also found that Plaintiff had no ability work in low light conditions. (Tr. 21, 50-51). Plaintiff does not argue there would be greater visual limitations because there are no greater limitations possible.

In regard to visual acuity, at her hearing, Plaintiff admitted that her near vision was "fine" with contacts, and she did not need glasses to read (Tr. 220). As discussed above in more detail, treating medical providers observed Plaintiff had no blurry vision or significantly decreased visual

acuity in her right eye and her pupils were reactive to light and accommodation. Plaintiff said that her "far vision [wa]s blurry without correction," but her vision improved with correction from contacts or glasses. (Tr. 42-43, 220). Plaintiff testified that when she played bingo, she was able to use the "dabber" to mark numbers on her cards, and she could "see the board" if she sat close to it. (Tr. 57-59). Before Plaintiff retired, she said that her eye condition only caused her to make one mistake and occasionally need one 15-minute break "a few times a week." (Tr. 43-47). Plaintiff also performed significant daily activities that demonstrated some level of visual acuity, including babysitting her grandchildren, cooking daily, cleaning her house, getting her grandchildren ready for school, washing laundry and dishes, ironing, shopping for food and personal items, traveling, visiting friends and family, watching television and movies, talking on the telephone, playing bingo, and performing personal care. (Tr. 36-37, 51, 56-59, 204-08). *See* 20 C.F.R. §§ 404.1529(a) (it is proper for the ALJ to consider a claimant's daily activities when weighing her subjective complaints); SSR 16-3p; *Poupore*, 566 F.3d at 307 (ALJ properly discounted Plaintiff's subjective complaints of disability based on daily activities); *Wolfe v. Comm'r of Soc. Sec.*, 272 F.App'x 21, 22 (2d Cir. Apr. 1, 2008) (same); *Donnelly v. Barnhart*, 105 F.App'x 306, 308 (2d Cir. Jul. 1, 2004) (same).

  The substantial evidence standard is so deferential that there could be "two contrary rulings on the same record [and both] may be affirmed as supported by substantial evidence." *Cage*, 692 F.3d at 127 (citing *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966)). "[O]nce an ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder *would have to conclude otherwise*." *Brault*, 683 F.3d at 448 (emphasis in original; internal quotation omitted). Plaintiff's arguments are a disagreement with how the ALJ evaluated the evidence. *See* Dkt. No. 10 at 8-15. When substantial evidence of record supports the ALJ's determination of the facts, the Court must

defer to the ALJ's decision. *See Vilardi v. Astrue*, 447 Fed. App'x 271, 272 (2d Cir. Jan. 10, 2012) (summary order); *Rouse v. Colvin*, No. 14-CV-817S, 2015 WL 7431403, at *6 (W.D.N.Y. Nov. 23, 2015) (unpublished).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **<u>GRANTED</u>**.

Dated: October 8, 2019  
Rochester, New York

*J. Gregory Wehrman*  
HON. J. Gregory Wehrman  
United States Magistrate Judge